IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

JOSEPH REINWAND,

                                                                 OPINION and ORDER

                         Petitioner,

                                                  19-cv-767-bbc

              v.                                          and

SUE NOVAK,                                   19-cv-810-bbc

                         Respondent.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Petitioner Joseph Reinwand, who is incarcerated at the Columbia Correctional Institution, has filed two pro se petitions for a writ of habeas corpus under 28 U.S.C. § 2254. I am addressing both petitions in this decision because petitioner is challenging hearsay statements by a deceased individual that were introduced in both of the trials he is contesting.

In case no. 19-cv-767-bbc, petitioner challenges a judgment of conviction from Wood County case number 2013CF196B for first degree intentional homicide of Dale Meister, the father of petitioner's granddaughter. Petitioner contends that (1) the state court violated his right to confrontation by admitting hearsay statements that Meister made to others before his death; (2) the state court erred by admitting evidence that petitioner had burglarized his neighbor's house; and (3) petitioner received ineffective assistance of trial counsel. This petition is fully briefed and ready for decision.

In case number 19-cv-810-bbc, petitioner challenges a judgment of conviction from Portage County case number 2014CF311 for the first degree murder of Pamela

1

Reinwand, petitioner's wife.  As in his other case, petitioner contends that the court violated his right to confrontation by admitting the out-of-court statements of Meister. The state filed a motion to dismiss this petition on the grounds of procedural default. Dkt. #14.

For the reasons below, I conclude that petitioner has failed to show that he is in custody in violation of the constitutional rights with respect to his conviction for killing Dale Meister in Wood County case number 2013CF196B.  As for the petition relating to petitioner's conviction for killing his wife in Portage County case number 2014CF311, petitioner's claim is procedurally defaulted.  Accordingly, I will deny both petitions.

The following facts are drawn from the petitions and the state court records provided by petitioner and the state.

BACKGROUND

A.  <u>Wood County Case</u>

In Wood County case number 2013CF196B, petitioner was charged with the first degree intentional homicide of Dale Meister.  Meister was killed in February 2008, but the state did not charge petitioner until May 2013.  Petitioner pleaded not guilty and proceeded to a jury trial.

1. <u>Trial and conviction</u>

Over the course of a nine-day jury trial, the state presented evidence that Meister and petitioner's daughter, Jolynn, had a child together.  At the time of Meister's death, Meister and Jolynn were involved in a custody dispute about their daughter.  Meister and Jolynn participated in court-ordered mediation to resolve their conflict, which resulted in a recommendation that Meister receive visitation rights.  Jolynn was not happy with the results of the mediation.  Three days after the mediation, Meister's neighbor noticed a truck similar to petitioner's parked at Meister's trailer and saw two men arguing.  Around the same time, Meister's cell-phone activity ceased, and Meister failed to pick up his child as arranged.  On March 4, 2008, Meister's friends went to visit him and found his trailer unlocked.  They entered and saw Meister's body on his couch.  Meister had been shot three times.

The state presented evidence at trial that Meister had been killed with a .22 caliber Bryco-Jennings pistol, that petitioner owned a Bryco-Jennings pistol and that police found a .22 caliber bullet from a Bryco-Jennings pistol in petitioner's trash.  The police also found a grip from a Bryco-Jennings pistol in petitioner's truck that appeared to have been cut with a bandsaw, and there was a bandsaw in the basement where petitioner was staying.  The spare key to Meister's trailer was also in the home where petitioner was staying.

The state called a DNA expert to testify.  Before trial, the court had ruled that the state's DNA expert could not provide expert testimony based on 2008 testing standards,

but must instead rely on updated standards that had been in effect since 2014.  Under the 2014 standards, the expert could not state conclusively whether the DNA on the gun grip found under the seat of petitioner's truck belonged to petitioner.   On cross-examination, petitioner's attorney asked the DNA expert for her opinion as to whether petitioner's DNA was present on seven other items found in Meister's trailer after the homicide.  The expert said it was not.  However, the expert's opinion on these items was based on the 2008 testing standards.  The circuit court held that by asking questions about items tested under the 2008 standards, petitioner's attorney had opened the door to the results of the 2008 DNA test on the gun grip.  The jury was therefore allowed to hear that, under the outdated 2008 testing standards, petitioner was included as a possible contributor to the DNA found on the gun grip, and that the probability of randomly selecting an individual who may be included as a possible contributor was 1 in 61,000.

Petitioner was interviewed by the police after Meister's death, and the state introduced the interview at trial.  During the interview, petitioner told the police officer that he likely killed Meister, but that he could not remember doing it.  Dkt. #20-1, at 33, 38, 55.  Petitioner also stated that he could not remember other, earlier crimes, that he had been accused of, including burglarizing his neighbor's home.   The state then introduced a letter that petitioner had written to his granddaughter in which he admitted to the burglary of his neighbor's home.  The letter was admitted over defense counsel's objection.

Four inmates testified about statements that petitioner made after Meister's murder. One testified that petitioner told him that he did not like Meister. Another testified that petitioner told him that he had killed a man in Wisconsin Rapids. The third testified that petitioner said that he would rather be in jail than have Meister walking the street, and testified that petitioner had made a gesture like a handgun when he said this. The fourth inmate testified that petitioner had stated that Meister was a "child predator," and that petitioner had choked and shot Meister.

Two witnesses testified that they saw petitioner make threats towards Meister and engage in physical altercations with Meister before Meister's death.

Finally, twelve of Meister's friends and family members testified about conversations they had with Meister before his death. Before trial, the state sought permission from the court to introduce the out-of-court statements that Meister had made to various individuals during the weeks before his murder. The statements generally fell within one of the following two categories: (1) statements indicating that if Meister was found dead, petitioner should be "looked into"; and (2) statements telling the listener that petitioner had threatened to harm or kill Meister and that Meister was afraid that petitioner was going to harm him. The circuit court concluded that the statements were testimonial and subject to the Confrontation Clause, but that the state had shown that the "forfeiture by wrongdoing" doctrine applied to the statements and, therefore, they were admissible at trial. Specifically, the court found that the state had shown by a preponderance of the evidence that petitioner had engaged in wrongdoing by

killing Meister with the intent to prevent him from testifying as a witness in further custody placement proceedings regarding Meister and Jolynn's child.

The twelve individuals who testified about Meister's out-of-court statements included Meister's family, friends and neighbors.  Many of the witnesses testified that while they were having conversations with Meister about his relationship with Jolynn and the child custody dispute, Meister told them that petitioner was interfering and had threatened Meister with harm.  For example, Alice Conwell, Jolynn's grandmother, testified that Meister accused petitioner of interfering in the custody dispute.  Meister also told Conwell that if anything happened to him, she "should look to" petitioner. Meister did not elaborate or tell Conwell to go to the police.

Similarly, Renee Steger, Jolynn's aunt, testified that Meister spoke to her about the custody dispute, and told her that petitioner was interfering in Meister's relationship with Jolynn, that Meister felt threatened by petitioner and that he feared petitioner might "come after him" for seeking custody.  Meister told Renee Steger that if anything happened to him, she should "look to" petitioner, but the two did not discuss contacting law enforcement.  Michael Steger, Jolynn's uncle, testified that Meister told him he was afraid of petitioner harming or even killing him.

Ethan Bauer, petitioner's son and Jolynn's half-brother, testified that Meister spoke with him about the custody dispute on the phone and at an Arby's.  Meister told Bauer that petitioner had threatened to harm or even kill him and asked whether Bauer thought he should be concerned that petitioner would actually carry out his threats.

6

Jodi and Todd Biadasz, long-time friends of Meister, testified that they spoke with Meister at their home and over the phone. Meister told Jodi that he was having problems with petitioner's interference in the custody dispute and that he was afraid of petitioner. Meister told Todd that petitioner had threatened him by saying that he would shoot Meister in the temple and get away with it. Meister told both Jodi and Todd that if anything happened to him, they should tell his brother about petitioner.

Another friend of Meister's, Randy Winkels, testified that Meister spoke to him during a family event at Winkels's home. Meister discussed the custody dispute and told Winkels about an incident in which petitioner had come to his home and, during an argument, pushed him against a wall and choked him.

Meister's neighbor, Monica Mason, testified that she spoke to Meister at a local gas station about his custody dispute. Meister then came to Mason's home and told her about an incident in which petitioner had come to Meister's home and confronted him. Meister told Mason that he felt "that his life would be on the line" if he continued to pursue visitation with his child. When Monica suggested that Meister contact the police, Meister refused.

Three other friends and family members of Meister's testified that they spoke with Meister about petitioner's threats and interference in the child custody dispute. Meister told Fellowes that petitioner had told him that he could kill Meister if he wanted to.

Finally, Martin Baur, Meister's pastor, testified that he spoke with Meister over the phone and at church facilities about his relationship with Jolynn and the custody

dispute.  Meister expressed concern about petitioner, and he told Baur that "if he came up dead, . . . the police should dig deeper because it would look staged," and that petitioner "would be behind it."

The jury convicted petitioner of first-degree intentional homicide. The court sentenced petitioner to life imprisonment without the possibility of parole.

## 2.  Post-conviction motion and appeal

Petitioner filed a post-conviction motion in the trial court, contending that his trial counsel was ineffective in his cross-examination of the state's DNA expert and at sentencing. The court denied the motion after holding an evidentiary  hearing.

Petitioner appealed, raising four issues: (1) the admission of Meister's out-of-court statements to numerous individuals violated his right to confront his accusers; (2) admission of the evidence that petitioner had burglarized his neighbor's house violated Wis. Stat. § 904.04, Wisconsin's evidentiary rule on other-acts evidence; (3) trial counsel was ineffective in his cross-examination of the state's DNA expert by opening the door to the 2008 DNA gun-grip results; and (4) counsel was ineffective at sentencing.   The Wisconsin Court of Appeals certified the appeal to the Wisconsin Supreme Court as to the question whether Meister's out-of-court statements were admissible under the "forfeiture by wrongdoing" doctrine, if the state could show that one of the reasons that petitioner killed Meister was to prevent him from testifying during custody proceedings that did not involve petitioner.   The Supreme Court did not reach the certification

question regarding forfeiture by wrongdoing, concluding that the Confrontation Clause was not implicated because none of Meister's statements to his friends and family was testimonial.   The supreme court rejected petitioner's other arguments and affirmed petitioner's conviction.   State v. Reinwand, 2019 WI 25, 385 Wis. 2d 700, 924 N.W.2d 184.

B.  Portage County Case

In Portage County case number, petitioner was charged with first-degree murder for the death of his wife, Pamela Reinwand.  Pamela Reinwand died in her home in 1984, of a single gunshot to the head.  Pamela's death was originally ruled a suicide by the coroner.   Later, the investigation into Pamela's death was reopened, and in 2014, petitioner was charged in this case with first-degree murder for Pamela's death. Petitioner pleaded not guilty and proceeded to a jury trial.

Prior to trial, the state filed with the circuit court a notice of intent to introduce into evidence out-of-court statements made by Dale Meister to friends and family, including that: (1) petitioner had threatened Meister and told Meister that he could kill Meister and get away with it just as he had done with Pamela many years earlier; (2) petitioner had told Meister that he had killed in the past and gotten away with it and could do so again with Meister; (3) Meister was scared of petitioner and told witnesses that he expected to wind up dead and that petitioner would stage it to look like a suicide;

(4) if he wound up dead, it would not be a suicide; and (5) petitioner was upset that Meister was checking into whether Pamela's death in May 1984 was truly a suicide.

Defense counsel objected to the admission of Meister's out-of-court statements on the ground that they were inadmissible under the Confrontation Clause. The trial court concluded that the out-of-court statements were not barred by the Confrontation Clause, and that they were admissible at trial under various hearsay exceptions. Ultimately, five witnesses testified at trial about out-of-court statements made by Meister before Meister's death. Three of the witnesses were long-time friends of Meister, one was Pastor Bauer, and one was Pamela's mother. After a five-day trial, a jury found petitioner guilty of first-degree murder.

Petitioner appealed, arguing that he was entitled to a new trial because the admission of Meister's out-of-court statements violated his rights under the Confrontation Clause. The Wisconsin Court of Appeals concluded that petitioner had failed to adequately develop his argument, and dismissed his appeal. State v. Reinwand, 2018 WI App 71, 384 Wis. 2d 631, 922 N.W.2d 309. The Wisconsin Supreme Court denied the petition for review.


OPINION

A. Wood County Case

In challenging his conviction for killed Dale Meister, petitioner contends that: (1) the state court violated his right to confrontation under the Sixth Amendment by

admitting hearsay statements that Meister made to others before his death; (2) the state court erred by admitting evidence that petitioner burglarized his neighbor's house; and (3) trial counsel was ineffective by opening the door to the 2008 DNA evidence.  To prevail on his petition, petitioner must show that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §§ 2241(c), 2254(a). Because the Wisconsin Supreme Court addressed the merits of petitioner's claims when it affirmed his conviction, this court's review is subject to the deferential standard of review under 28 U.S.C. § 2254(d).  Under § 2254(d)(1), petitioner must show that the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court."  A decision is contrary to clearly established federal law if it applies a rule that is different from governing law set forth in Supreme Court cases.  Bailey v. Lemke, 735 F.3d 945, 949–50 (7th Cir. 2013). A decision involves an unreasonable application of Supreme Court precedent if the decision identifies the correct governing rule of law, but it applies the law unreasonably to the facts of the case. Id.

Alternatively, petitioner can obtain relief if he shows that the state court's adjudication of his claims was based upon an unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d)(2).  But again, the federal court owes deference to the state court.  The underlying state court findings of fact are presumed correct unless the petitioner comes forth with clear and convincing evidence to

the contrary.  28 U.S.C. § 2254(e)(1); <u>Campbell v. Smith</u>, 770 F.3d 540, 546 (7th Cir. 2014).

1.  <u>Confrontation Clause claim</u>

The Confrontation Clause of the Sixth Amendment states that "in all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."  U.S. Const. amend. VI.  The Confrontation Clause bars out-of-court statements if they are "testimonial," unless the declarant is unavailable, and the defendant had a prior opportunity to cross-examine the declarant.  <u>Crawford v. Washington</u>, 541 U.S. 36, 54 (2004).

A threshold question in confrontation claims is whether the out-of-court statement at issue is "testimonial" or "nontestimonial."  Statements that are testimonial implicate the Confrontation Clause, but nontestimonial statements do not.  <u>Giles v. California</u>, 554 U.S. 353, 376 (2008).  A statement is "testimonial" if the "primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution."  <u>Davis v. Washington</u>, 547 U.S. 813, 822-23 (2006).  Prior sworn testimony and statements during a police interrogation are testimonial.  <u>Crawford</u>, 541 U.S. at 68.  In contrast, a statement is nontestimonial if the "primary purpose" is to notify police or emergency responders about an ongoing emergency or if the statements are made in the context of requesting help from family, friends, or medical providers.  <u>Id.</u> Thus, 911 calls seeking police assistance for an ongoing emergency, statements to friends

12

and neighbors and statements to physicians in the course of receiving treatment will rarely be testimonial.  Davis, 547 U.S. at 822, 828; Giles, 554 U.S. at 376; Michigan v. Bryant, 562 U.S. 344, 378 (2011).  In determining whether a statement is testimonial or not, courts must consider the factual circumstances under which the statements were made.  Davis, 547 U.S. at 822.  Relevant factors include whether an ongoing emergency exists, whether law enforcement is present and the formality of the situation and the interrogation.  Ohio v. Clark, 135 S. Ct. 2173, 2180 (2015).

The state argues that the trial court did not err in admitting Meister's out-of-court statements because Meister's statements to his friends, family and neighbors were nontestimonial.  In resolving this issue, the Wisconsin Supreme Court applied the correct "primary purpose" standard for determining whether Meister's statements were testimonial.  State v. Reinwand, 2019 WI 25, ¶ 23, 385 Wis. 2d 700, 924 N.W.2d 184.  The court concluded that Meister's statements were not testimonial because the primary purpose of his statements was not to create an out-of-court substitute for trial testimony.  Instead, Meister's primary purpose was to vent to his friends and neighbors, to express concern about petitioner's actions and to seek advice about his ongoing custody dispute.  Each conversation occurred in an informal setting: in Meister's home and the homes of his friends and family, at a gas station, a fast-food restaurant and over the phone.  None of the listeners were law enforcement, and Meister never instructed any of the listeners to contact law enforcement.  When listeners suggested reporting petitioner to the police, Meister refused.  In sum, all of the relevant factors support the supreme court's

conclusion that Meister's spoke to his friends and neighbors because he was concerned, under stress and genuinely frightened, not because he was attempting to create testimony that could be used at a later criminal prosecution.

Petitioner's arguments to the contrary are not persuasive. He contends that the statements were "testimonial" because ultimately they were presented in a formal setting during his criminal trial. He also argues that the listeners were not strangers to Meister. However, neither of these factors supports a conclusion that the statements were testimonial. The court assesses the formality of the setting at the time the statements were made, not when they are presented later in court. And the fact that Meister was a friend of the listeners actually supports the conclusion that the statements were nontestimonial.

Under these circumstances, the state court's conclusion that Meister's statements were nontestimonial was a reasonable application of federal standards governing Confrontation Clause challenges. Accordingly, petitioner is not entitled to habeas relief on this claim.


2. Evidence of petitioner's earlier burglary

Petitioner's second argument is that the trial court improperly admitted "other-acts" evidence when it permitted the state to introduce a letter that petitioner had written to his granddaughter, in which he admitted to committing a prior non-violent

burglary.  Petitioner argues that the evidence was improper character evidence that was irrelevant, unduly prejudicial and violated his right to due process.

The state contends that petitioner procedurally defaulted on this claim because he failed to present to the state courts any federal claim based on the trial court's admission of the other-acts evidence.  I agree.  To properly raise an issue on habeas review, a petitioner must have "fairly presented" that issue through one complete round of state court review.  Richardson v. Lemke, 745 F.3d 258, 268 (7th Cir. 2014).  This means that petitioner must have "sufficiently alerted" the state court "to the federal constitutional nature of the issue to permit it to resolve that issue on a federal basis."  Whatley v. Zatecky, 833 F.3d 762, 771 (7th Cir. 2016).  The Court of Appeals for the Seventh Circuit has set forth four factors to consider in determining whether a petitioner has avoided default in such circumstances: (1) whether the petitioner relied on federal cases that engage in a constitutional analysis; (2) whether the petitioner relied on state cases that apply a constitutional analysis to similar facts; (3) whether the petitioner framed the claim in terms so particular as to call to mind a specific constitutional right; or (4) whether the petitioner alleged a pattern of facts that is well within the mainstream of constitutional litigation.  Id. at 771.  All four factors need not be present to avoid default, and conversely, a single factor alone does not automatically avoid default.  Id.  Rather, the court "must consider the specific circumstances of each case."  Id.

In this instance, nothing in petitioner's state court appellate briefs, or the Wisconsin Supreme Court's decision, suggests that he raised in state court the due

process claim that he now raises here.  During his appeal, petitioner framed the argument about the burglary evidence as a state-law issue, and contended that the trial court violated Wis. Stat. § 904.04 regarding the admission of character evidence.  The supreme court's decision also focuses solely on Wisconsin law, and does not discuss federal constitutional standards.  Reinwand, 2019 WI 25, ¶¶ 33-38. Petitioner's state-law claim was insufficient to preserve the due process claims he now raises. Accordingly, petitioner procedurally defaulted on this claim.  Perruquet v. Briley, 390 F.3d 505, 514 (7th Cir. 2004) (when petitioner has already pursued state court remedies but failed to properly present claim to state courts, that claim is barred by doctrine of procedural default). Because petitioner has made no effort to argue that an exception to procedural default applies, he is not entitled to relief on this claim.


3.  Ineffective assistance of trial counsel

Finally, petitioner argues that he was prejudiced by his trial counsel's cross-examination of the state's DNA expert.  The Wisconsin Supreme Court stated correctly that petitioner could not succeed on his ineffective assistance claims unless he could show both that his counsel's performance was deficient and that he was prejudiced as a result. Reinwand, 2019 WI 25, ¶ 40.  See also Harrington v. Richter, 562 U.S. 86, 104 (2011); Strickland v. Washington, 466 U.S. 668, 687 (1984). To demonstrate deficient performance, petitioner must show "that counsel's representation fell below an objective standard of reasonableness."  Strickland, 466 U.S. at 687–88.  To demonstrate prejudice,

16

petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

The supreme court did not discuss whether counsel was deficient, because it concluded that petitioner had failed to show that he was prejudiced by the admission of the 2008 DNA report results regarding the gun grip. The supreme court's analysis and conclusion were reasonable. As the court stated, the jury heard evidence that the 2008 methods used to test the DNA were outdated. In addition, regardless whether petitioner's DNA was on the gun grip, the state had introduced evidence that the gun grip was found in petitioner's truck, that petitioner had a pistol matching the gun grip and that petitioner had a bandsaw that could have been used to cut the gun grip. The jury could have concluded that the gun grip belonged to petitioner without the DNA evidence. Finally, the evidence of petitioner's guilt, including his own admission that he likely killed Meister, was overwhelming. Thus, there was no reasonable probability that, without the 2008 gun-grip results, the jury would have found petitioner not guilty.

The supreme court's analysis was not contrary to, or an unreasonable application of Strickland. Nor was it unreasonable in light of the evidence. Accordingly, petitioner is not entitled to habeas relief on this claim.

## B. Portage County Case

In challenging his conviction for killing his wife, Pamela Reinwand, petitioner contends that the trial court erred by admitting the out-of-court statements by Dale

Meister.  As in his other habeas petition, petitioner contends that the admission of Meister's statements violated petitioner's rights under the Confrontation Clause to confront his accusers.

The state contends that petitioner's Confrontation Clause claim is barred by the doctrine of procedural default because the Wisconsin Court of Appeals relied on an adequate and independent state-law ground in rejecting it.  If a state court does not reach a federal claim because of an "adequate and independent" state procedural rule, the petitioner is procedurally barred from raising the claim in a federal habeas petition unless the petitioner can show cause and prejudice.  A state procedural rule is an adequate and independent ground if the rule is firmly established and regularly followed, applied consistently and frequently and was actually relied on as the basis for the court's decision. Smith v. McKee, 598 F.3d 374, 382 (7th Cir. 2010); Promotor v. Pollard, 628 F.3d 878, 885–86 (7th Cir. 2010).

In this instance, the court of appeals stated clearly that it was not addressing the merits of petitioner's confrontation claim because his claim was "undeveloped"and "completely lacking in content."  Reinwand, 2018 WI App 71, ¶¶ 13, 17.  The court cited Associates Financial Servs. Co. v. Brown, 2002 WI App 300, 258 Wis. 2d 915, 656 N.W.2d 56, which, in turn, cites State v. Pettit, 171 Wis. 2d 627, 492 N.W.2d 633, 642 (Ct. App. 1992), for the rule that Wisconsin appellate courts do not address arguments that are inadequately developed.

The Court of Appeals for the Seventh Circuit has stated that Wisconsin's rule against considering inadequately developed claims on appeal is an adequate state-law ground. Kerr v. Thurmer, 639 F.3d 315, 323 (7th Cir. 2011), vacated on other grounds, Thurmer v. Kerr, 566 U.S. 901 (2012). The court recognized that this procedural rule "has consistently been a reason to reject claims advanced by litigants in the Wisconsin state courts." Id. The rule is thus firmly established and regularly followed. Id. This denial thus constituted adequate and independent state grounds, resulting in procedural default. Id. See also Maus v. Foster, No. 14-C-1393, 2017 WL 680423, at *5 (E.D. Wis. Feb. 21, 2017) (holding the state court's rejection of claim as undeveloped was adequate and independent state law ground that resulted in procedural default of federal habeas claim); Walker v. Kempen, No. 12-CV-60, 2013 WL 1149062, at *4 (E.D. Wis. Mar. 19, 2013) (same); Pegues v. Huibregtse, No. 11-CV-194-WMC, 2011 WL 3566775, at *2 (W.D. Wis. Aug. 12, 2011) (same).

Therefore, the Wisconsin Court of Appeals's reliance on Associates Financial Servs. and Pettit constitutes adequate and independent state grounds, and petitioner's federal habeas claim is procedurally defaulted.

When a petitioner has procedurally defaulted on a claim, a federal court may not consider the claim in a habeas petition unless the petitioner can show cause and prejudice for his failure to exhaust his claims, Edwards v. Carpenter, 529 U.S. 446, 451 (2000), or show that dismissal would result in a fundamental miscarriage of justice. Schlup v. Delo, 513 U.S. 298, 315 (1995). In this instance, petitioner contends that his default should

be excused because his appellate counsel was ineffective for failing to develop his confrontation claims adequately.

Meritorious claims of ineffective assistance can excuse a procedural default. Murray v. Carrier, 477 U.S. 478, 488–89 (1986); Brown v. Watters, 599 F.3d 602, 609 (7th Cir. 2010). However, those claims must themselves be preserved; in order to use the independent constitutional claims of ineffective assistance appellate counsel as cause to excuse a procedural default, a petitioner is required to raise the claims through one full round of state court review. Richardson v. Lemke, 745 F.3d 258, 272 (7th Cir. 2014). Here, petitioner never presented to the state courts an argument that his appellate counsel was ineffective, and he cannot raise that argument for the first time here.

Moreover, such an argument would likely fail, because petitioner would be unable to show that he was prejudiced by his appellate counsel's failure to develop his confrontation claim. Although the Wisconsin Court of Appeals declined to address the merits of the confrontation claim, it stated in a footnote that:

> even if Reinwand had developed such an argument to the circuit court and again on appeal, we would not be persuaded that the statements of the four witnesses who testified to Meister's statements as to Reinwand's confessions are testimonial. So far as we can see, Meister made the statements during casual conversations with friends and a close acquaintance, and nothing in the circumstances surrounding those conversations would lead us to conclude that Meister believed his statements would be used later at a trial.

Reinwand, 2018 WI App 71, n.2. In other words, petitioner's confrontation claim would fail for the same reasons it failed in his Wood County case – Meister's out-of-court

statements were not testimonial and are not barred by the Confrontation Clause. Accordingly, petitioner is not entitled to habeas relief.

## C. Certificates of Appealability

For the reasons discussed above, I conclude that petitioner has failed to show that he is entitled to habeas relief on either of his convictions.  The only question remaining is whether to issue petitioner a certificate of appealability as to either habeas case.

Under Rule 11 of the Rules Governing Section 2254 cases, I must issue or deny a certificate of appealability when entering a final order adverse to a petitioner. A certificate of appealability will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires him to demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 813 529 U.S. 473, 484 (2000)).  Although the rule allows me to ask the parties to submit arguments on whether a certificate should issue, it is not necessary to do so in these cases.  Petitioner has not made a showing, substantial or otherwise, that either of his convictions was obtained in violation of clearly established federal law as decided by the Supreme Court.  Because reasonable jurists would not otherwise debate whether a different result was required, I will not issue petitioner a certificate of appealability in either case.

ORDER

IT IS ORDERED THAT

1.  Joseph Reinwand's petitions for writs of habeas corpus under 28 U.S.C. § 2254 in these cases are DENIED, and these cases are DISMISSED.  The clerk of court is directed to enter judgment for respondent and close these cases.

2.  A certificate of appealability is DENIED in both cases.  If petitioner wishes, he may seek certificates from the court of appeals under Federal Rule of Appellate Procedure 22.

Entered this 21st day of April, 2020.

BY THE COURT:

/s/

_____
BARBARA B. CRABB
District Judge

22